IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MATTHEW MEINEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:22-cv-00620-JAR |
| ) | |
| BI-STATE DEVELOMENT AGENCY, ) | |
| ) | |
| Defendant. ) | |

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff, through the undersigned counsel, and for his First Amended Complaint, states as follows:

### Nature of Action

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964.

### Parties

2. Plaintiff is an adult male citizen of the State of Missouri.

3. Plaintiff is Caucasian.

4. Defendant Bi-State Development Agency is an inter-state compact formed between Missouri and Illinois in 1949.

5. Defendant is commonly known as Metro.

6. Defendant provides transportation services to the general public throughout the St. Louis metropolitan area.

7. At all times relevant herein, Plaintiff was an employee of Defendant until he was terminated on or about May 17, 2021.

### Procedural Prerequisites

1

8. On or about July 8, 2021, Plaintiff timely submitted a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) wherein Plaintiff alleged Defendant unlawfully discriminated against him based on gender, race, and retaliation.

9. On or about January 26, 2022, the EEOC issued its Notice of Right to Sue with regard to Plaintiff's Charge, and Plaintiff instituted this action within 90 days of his receipt of the Notice of Right to Sue.

**Factual Allegations**

10. Plaintiff began working for Defendant in 2013.

11. Plaintiff worked in Defendant's Public Safety Department as a Transit Security Specialist ("TSS") Lead.

12. Plaintiff was qualified in all aspects for the TSS position, and throughout his employment Plaintiff met the expectations of a TSS.

13. Plaintiff worked the night shift.

14. In early 2021, Plaintiff endured sexual harassment from a female TSS (African-American) working the day shift.

15. For example, on several occasions this female TSS intentionally rubbed her backside on Plaintiff.

16. Plaintiff reported this to his supervisor, as well as her supervisor.

17. Shortly thereafter, Plaintiff was walking in the hallway in civilian attire and, when crossing paths with this same female TSS, she intentionally blocked Plaintiff's path and said: "you know you look good without clothes on, (pause…) I mean not in uniform."

18. Plaintiff immediately told the female TSS's supervisor about this incident.

19. Nonetheless, while all personnel from Plaintiff's night shift and the female TSS's day shift were gathered together in the squad room, the female TSS proceeded to tell everyone about the incident in the hallway (which she called a "slip up").

20. Plaintiff then reported the incident, as well as the fact that she had broadcast it to everyone, to his supervisor.

21. Several weeks later, again while all personnel from Plaintiff's night shift and the female TSS's day shift were gathered in the squad room, the female TSS stated to Plaintiff for everyone to hear: "it's not cheating if it's not in your race."

22. Plaintiff again reported this incident to his supervisor, as well as her supervisor.

23. During the same time period that Plaintiff was being harassed, specifically March 2021, a separate female TSS (Caucasian) working on a different night shift than Plaintiff submitted a complaint against another male TSS (Caucasian).

24. This complaint was investigated by the EEO department, specifically Amy Krekeler-Weber.

25. During the investigation, Krekeler-Weber interviewed Plaintiff as a potential witness.

26. During this interview, Plaintiff informed Krekeler-Weber of the issues he himself had been enduring.

27. Plaintiff asked Krekeler-Weber what he should do, and she told Plaintiff to write the harasser up.

28. Plaintiff then prepared a written disciplinary warning to the individual that was harassing him.

29. Plaintiff asked a fellow TSS Lead, Laquita Lowman, to accompany him when he served the disciplinary warning to his harasser, which she did.

30. Plaintiff's harasser admitted her misconduct, stating she was just joking.

31. To Plaintiff's knowledge, no investigation was ever conducted regarding Plaintiff's allegations against his harasser and no action was ever taken against her, other than the disciplinary warning issued by Plaintiff.

32. On or about May 17, 2021, Plaintiff was terminated based on false or pre-textual reasons.

33. The decision-maker(s) involved in Plaintiff's termination were aware of the previous complaints submitted by Plaintiff.

34. In addition, the male subject of the complaint filed by the female TSS in March 2021 was terminated as a result of the complaints levied against him.

## Count I – Termination (Retaliation)

35. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

36. Plaintiff opposed discrimination when he: (i) issued a disciplinary warning to his harasser, and (ii) reported the harassment he was enduring to numerous supervisors and the EEO Investigator.

37. Plaintiff had a reasonable belief he was being discriminated against.

38. Defendant took adverse employment action against Plaintiff when it terminated him.

39. Plaintiff's opposition to discrimination was a motivating factor to the adverse employment action taken against him.

40. In addition, but for Plaintiff's opposition to discrimination, Plaintiff would not have been terminated.

41. Plaintiff was damaged as a result of the adverse employment action taken against him.

42. Defendant's conduct as set forth above was outrageous because of an evil motive and reckless indifference to the rights of Plaintiff, in that Defendant intentionally discriminated against Plaintiff without just cause or excuse in violation of Title VII.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant for damages in excess of $25,000, including both actual and punitive damages, for the costs incurred herein and expended, for attorneys' fees, and for such other and further relief as the Court deems just.

## Count II – Termination (Gender)

43. Plaintiff is male, and therefore is a member of a protected group.

44. Defendant took adverse employment action against Plaintiff when it terminated him.

45. Plaintiff's gender was a motivating factor to the adverse employment action taken against him in that, *inter alia*, he was terminated for pre-textual reasons, whereas Plaintiff's complaints against a female coworker were entirely ignored and she was not disciplined in any fashion.

46. In addition, upon information and belief, Defendant has a pattern of terminating male employees while not terminating female employees based on similar conduct/allegations and/or less severe conduct/allegations.

5

47. Plaintiff was damaged as a result of the adverse employment action taken against him.

48. Defendant's conduct as set forth above was outrageous because of an evil motive and reckless indifference to the rights of Plaintiff, in that Defendant intentionally discriminated against Plaintiff without just cause or excuse in violation of Title VII.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant for damages in excess of $25,000, including both actual and punitive damages, for the costs incurred herein and expended, for attorneys' fees, and for such other and further relief as the Court deems just.

## Count III – Termination (Race)

49. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

50. Plaintiff is Caucasian, and therefore is a member of a protected group.

51. Defendant took adverse employment action against Plaintiff when it terminated him.

52. Plaintiff's race was a motivating factor to the adverse employment action taken against him in that, *inter alia*, he was terminated for pre-textual reasons, whereas Plaintiff's complaints against an African-American coworker were entirely ignored and she was not disciplined in any fashion.

53. In addition, upon information and belief, Defendant has a pattern of terminating Caucasian employees while not terminating non-Caucasian employees based on similar conduct/allegations and/or less severe conduct/allegations.

54. Plaintiff was damaged as a result of the adverse employment action taken against him.

55. Defendant's conduct as set forth above was outrageous because of an evil motive and reckless indifference to the rights of Plaintiff, in that Defendant intentionally discriminated against Plaintiff without just cause or excuse in violation of Title VII.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant for damages in excess of $25,000, including both actual and punitive damages, for the costs incurred herein and expended, for attorneys' fees, and for such other and further relief as the Court deems just.

## Count IV – Hostile Work Environment (Sexual Harassment)

56. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

57. Plaintiff was subjected to unwelcome sexual harassment during his employment with Defendant.

58. This unwelcome harassment adversely affected Plaintiff's employment, because: (i) it resulted in Plaintiff's termination, and (ii) the hostile environment made it difficult for Plaintiff to perform his job duties and caused him great emotional distress.

59. Defendant knew or should have known of the harassment Plaintiff was enduring.

60. Defendant failed to take prompt and appropriate corrective action to end the harassment.

61. The harassment Plaintiff endured was severe and pervasive such that it created an intimidating, hostile and offensive work environment, such that it affected a term, condition or privilege of his employment.

62. Plaintiff believed that his work environment was hostile and abusive, and, moreover, a reasonable person in Plaintiff's position would also find the work environment to be hostile and abusive

63. Plaintiff was damaged as a result of Defendant's actions.

64. Defendant's conduct of allowing a hostile work environment was outrageous because of an evil or malicious motive and/or reckless indifference to the rights of Plaintiff, in that Defendant intentionally allowed the hostile work environment to continue, and did not rectify the situation despite having actual or constructive knowledge of the situation.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant for damages in excess of $25,000, including both actual and punitive damages, for the costs incurred herein and expended, for attorneys' fees, and for such other and further relief as the Court deems just.

Respectfully submitted,

PONDER ZIMMERMANN LLC

By    /s/ Douglas B. Ponder
    Douglas Ponder, #54968
    dbp@ponderzimmermann.com
    Jaclyn M. Zimmermann, #57814
    jmz@ponderzimmermann.com
    20 South Sarah Street
    St. Louis, MO  63108
    Phone:    314-272-2621
    FAX:      314-272-2713
    *Attorneys for Plaintiff*

RECHENBERG LAW, LLC

By    /s/ Paul N. Rechenberg
    Paul N. Rechenberg, #40615
    paul@rechenberglaw.com
    215 Chesterfield Business Parkway
    Chesterfield, MO  63005
    Phone:    636-728-1900
    FAX:      636-530-6805
    *Co-counsel for Plaintiff*