## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| MATTHEW MEINEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 4:22-CV-00620-JAR |
| BI-STATE DEVELOPMENT AGENCY, | ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's motion to dismiss. (ECF No. 20). The motion is fully briefed and ready for disposition. For the reasons delineated below, the Court will grant the motion to dismiss.

**I.   Background**[1]

Plaintiff Matthew Meinen ("Meinen"), a Caucasian male, worked as a Transit Security Specialist ("TSS") Lead for Defendant Bi-State Development Agency ("Bi-State") from 2013 until he was terminated on May 17, 2021. (ECF No. 19). However, as of early 2021, Meinen began working the day shift. *Id*. During that time, he began experiencing sexual harassment from a female African-American TSS ("the Harasser"). *Id*.

Meinen alleges that the Harasser harassed him on several occasions, including by intentionally rubbing her backside on Plaintiff. (ECF No. 19 at 2). Although Meinen reported this to both his supervisor and the Harasser's supervisor, the harassment continued. *Id*. Once, when Meinen was walking in a hallway in civilian attire, the Harasser intentionally blocked Plaintiff's

---

[1] The facts are taken from Meinen's petition, (ECF No. 19), which the Court accepts as true for purposes of Bi-State's motion to dismiss.

path and told him, "you know you look good without clothes on…I mean, not in uniform." *Id*. Although Meinen again reported this incident to the Harasser's supervisor, the Harasser shared information about the harassment with personnel from Meinen's night shift and the Harasser's day shift. *Id*. at 3. Meinen reported both this comment and the Harasser's sharing of the comment to others to the Harasser's supervisor. *Id*. Nevertheless, several weeks later, the Harasser told Meinen "it's not cheating if it's not in your race" within earshot of personnel from both the night shift and day shift. *Id*. Meinen again reported this incident to the Harasser's supervisor. *Id*.

In March 2021, another female TSS working on a different night shift than Meinen submitted a complaint against a male TSS. (ECF No. 19 at 3). Both of these TSSs were Caucasian. *Id*. Bi-State's human resources employee, Amy Krekeler-Weber, investigated this incident, and interviewed Meinen as a potential witness. *Id*. Meinen directly informed Ms. Krekeler-Weber of the Harasser's actions, and Ms. Krekler-Weber told Meinen that he should write the Harasser a disciplinary warning. *Id*. Meinen did so and delivered the disciplinary warning to the Harasser. *Id*. The Harasser admitted her misconduct and stated that she was "just joking." *Id*. at 4. To Meinen's knowledge, Bi-State did not investigate or take other action against the Harasser. On May 17, 2021, Bi-State terminated Meinen for what he describes as "false or pre-textual reasons."[2] *Id*.

Meinen first filed a lawsuit against Bi-State in the Circuit Court of St. Louis City, Missouri on April 21, 2022. (ECF No. 1). Bi-State then removed the case to this Court on June 10, 2022. *Id*. Shortly thereafter, Bi-State filed a motion to dismiss Meinen's first complaint. (ECF No. 7). However, the Court granted Meinen leave to amend his complaint, and Meinen did so on August

---

[2] Meinen does not identify the persons responsible or the reasons given for his termination in his Amended Complaint.

10, 2022. (ECF. No. 19). Meinen's Amended Complaint alleges four counts, each pursuant to Title VII of the Civil Rights Act of 1964: (i) Retaliation (Count I), (ii) Gender Discrimination (Count II), Race Discrimination (Count III), and Hostile Work Environment (Count IV). *Id*. Bi-State now moves to dismiss each of these counts. (ECF No. 20).

   II.     **Legal standards**

To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir.) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Id*. at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id*. at 556. When ruling on a motion to dismiss, the Court must accept the allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010).

In discrimination cases, courts evaluate a plaintiff's evidence under the burden-shifting test first outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). However, at the pleading phase, a plaintiff need not plead facts establishing a prima facie case for

3

their Title VII claim. *See Wilson v. Arkansas Dep't of Human Servs.*, 850 F.3d 368, 372 (8th Cir. 2017); *Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924, 926–27 (8th Cir. 1993). Rather, in the discrimination context, "the prima facie model is an evidentiary, not a pleading, standard." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002)). Because the prima facie model is not a pleading standard, "there is no need to set forth a detailed evidentiary proffer in a complaint." *Id.* (citation omitted). *See Ring*, 984 F.2d at 926–27.

However, the "elements of the prima facie case are [not] irrelevant to a plausibility determination in a discrimination suit." *Blomker*, 831 F.3d at 1056 (alteration in original) (citation omitted). The allegations in a complaint must "'give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas*,' which in turn 'reduces the facts needed to be *pleaded* under *Iqbal*.'" *Wilson*, 850 F.3d at 372 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 310, 312 (2d Cir. 2015)). The elements are "part of the background against which a plausibility determination should be made." *Blomker*, 831 F.3d at 1056 (internal quotations omitted). The elements of a prima facie case "may be used as a prism to shed light upon the plausibility of the claim." *Id.* (citation omitted). Through this prism, the complaint "*must include sufficient factual allegations to provide the grounds on which the claim rests*." *Id.* (emphasis in original) (quoting *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009)).

**III.    Discussion**

    **A.  Plaintiff's Retaliation Claim**

To sufficiently plead a claim for retaliation under Title VII, a plaintiff must plead: (i) that he engaged in statutorily protected conduct, (ii) that he suffered an adverse employment action, and (iii) that a causal connection exists between the two. *See Wells v. SCI Mgmt., L.P.*, 469 F.3d

4

697, 702 (8th Cir. 2006). Meinen "must demonstrate that [his] 'protected activity was the but-for cause of the alleged adverse action by the employer.'" *Tognozzi v. Mastercard Int'l Inc.*, No. 4:16-cv-2045-CDP, 2017 WL 2225207, at *5 (E.D. Mo. May 22, 2017) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). To make such a showing, "'[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required.'" *Tognozzi*, 2017 WL 2225207, at *5 (quoting *Keil v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999)). Where a plaintiff "sets forth additional facts that strengthen the inference of a causal link," though, his complaint is sufficiently pleaded. *Tognozzi*, 2017 WL 2225207, at *5 (holding that, even if the temporal period of four months between plaintiff's protected activity and later termination alone was insufficient to support her claim of retaliation under Title VII, her claim nonetheless survived a motion to dismiss because she also alleged that she received only positive performance reviews prior to her statutorily protected activity). Thus, generally, a plaintiff must provide more than a temporal connection between protected conduct and adverse employment action in order for the Court to infer a causal connection between the two. *See Tognozzi*, at *5 (quoting *Univ. of Tex. Sw. Med. Ctr.*, 570 U.S. at 362). When the temporal gap between the two events is particularly close, a court is more likely to find that it evidences causation. *See O'Toole v. City of St. Louis*, Case No. 4:20-cv-01851-MTS, 2022 WL 782306, at *3 (E.D. Mo. Mar. 15, 2022) (considering a gap of approximately eight days between the plaintiff's protected activity and adverse employment action).

In response to Bi-State's motion to dismiss and in support of his retaliation claim, Meinen asserts that the temporal proximity between his termination and his reporting the harassment support an inference of causation. (ECF No. 24 at 5). In his Amended Complaint, Meinen alleges that he first endured sexual harassment in "early 2021." (ECF No. 19 at 2). He then reported this

5

to both his supervisor and the alleged harasser's supervisor "shortly thereafter." *Id*. Though Meinen does not provide specific dates regarding other harassment, he states that after each incident, he reported the harassment to his supervisor. *Id*. at 2-3. As stated, he last reported the Harasser in March 2021 as part of Ms. Krekeler-Weber's investigation into another incident. *Id*. at 3. Although Meinen alleges that he issued a disciplinary warning to the Harasser and reported the harassment, he does not provide precise dates for when he engaged in this conduct.

Taking all inferences in favor of Meinen the Court can infer that Meinen last reported his harassment when talking to Ms. Krekeler-Weber, in March, 2021. Likewise, the Court can infer that Meinen served the disciplinary warning sometime in March or April, 2021. This leaves a temporal gap of approximately two months between Meinen reporting his harassment and his termination, and a temporal gap of approximately one month between Meinen serving his disciplinary warning and his termination. In supporting his argument in favor of finding that temporal proximity supports his retaliation claim, Meinen cites to *O'Toole*, in which the Court found that a temporal proximity of eight days supported an inference of retaliation when supported by additional statements the defendants in that case made approving a pay raise for the plaintiff. 2022 WL 782306, at *3. In contrast, here, the temporal gap is significantly larger and more attenuated, and Meinen does not provide additional factual support from which the Court can infer that his protected activity was the but-for cause of his termination. *See, e.g., Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 835-36 (8th Cir. 2002) (noting that a two-month temporal gap "hurts" the plaintiff, "rather than helping her"); *Sanders v. BNSF Railway Co.*, File No. 17-cv-5106 (ECT/KMM), 2019 WL 5448309, at *14 (D. Minn. Oct. 24, 2019) (finding the temporal gap between "mid-March" and April 29 too attenuated to support an inference of retaliation). Meinen

6

provides no other support or basis for an inference of retaliation in his Amended Complaint. Thus, the Court must dismiss Count I of Meinen's Amended Complaint.

### B.  Plaintiff's Race and Gender Discrimination Claims

Meinen alleges that Bi-State's reason for terminating him was "false or pre-textual", thus basing his discrimination claims on indirect evidence. (ECF No. 20 at 4). Without direct evidence, a plaintiff establishes a prima facie case of sex discrimination by showing: (1) he belongs to a protected group; (2) he was qualified for her former job; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. *See also Ring*, 984 F.2d at 926. Once a prima facie case is established, the defendant must articulate a "non-discriminatory reason for the allegedly discriminatory action." *Tuttle v. Henry J. Kaiser Co.*, 921 F.2d 183, 186 (8th Cir. 1990). *See McDonnell Douglas*, 411 U.S. at 802 . If the defendant meets this burden, the plaintiff must then show "the articulated reason is mere pretext for a discriminatory motive." *Tuttle*, 921 F.2d at 186; *see generally, Blomker*, 831 F.3d at 1056 (using the elements of a prima facie case "as a prism to shed light upon the plausibility of the claim"). Here, Bi-State claims that Meinen has failed to allege circumstances which give rise to an inference of discrimination.

Bi-State argues that Meinen has not plead enough facts for the Court to infer discriminatory intent on behalf of the supervisors who ultimately terminated Meinen's employment, as Meinen does not identify those supervisors or their reasons for terminating Meinen. (ECF No. 21 at 4). Meinen asserts the same facts to demonstrate but-for causation for his retaliation and discrimination claims. First, Meinen alleges that he reported his harassment to two of his supervisors. (ECF No. 19 at 2).  He also alleges that the decision-makers involved in his termination were aware that he had previously submitted complaints and that the same decision

makers terminated him for "pretextual reasons." Further, Meinen states that his race and sex were "motivating factors" in his termination. *Id*. Finally, Meinen notes that Bi-State has terminated male employees as a result of harassment complaints levied against them, but has failed to terminate his African-American, female harasser; he argues this disparity between the handling of the two complaints evidences unequal treatment on the basis of his sex and race. (ECF No. 24 at 4).

Meinen must allege more than the "threadbare recitals" of the elements of a discrimination claim in order to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. His unsupported statements that he was terminated for "pretextual" reasons or that his race or sex were "motivating factors" in his termination are insufficient to support him against Bi-State's motion.

Meinen's comparison to a Caucasian female employee who reported that her Caucasian male co-worker harassed her is likewise insufficient to give rise to an inference of discrimination. Allegations of disparate treatment may support an inference of discrimination. When relying on disparate treatment allegations, however, the plaintiff must allege that he was "treated less favorably than similarly situated employees outside the plaintiff's protected class." *Id*. The individuals selected for comparison "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Evance v. Trumann Health Services, LLC*, 719 F.3d 673, 678 (8th Cir. 2013); *see also Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968, 972 (8th Cir. 1994) (noting that employees are similarly-situated when they are "similarly situated in all relevant respects" and "are involved in or accused of the same offense and are disciplined in different ways."). Meinen claims that Bi-State "has a pattern of terminating male employees while not terminating female employees" who make similar allegations or based on similar harassment. (ECF No. 20 at 5). Nevertheless, he

provides no evidence of this statement besides a single comparator. Although Ms. Krekeler-Weber's response to the two instances of harassment was different, this is insufficient to infer discriminatory intent. Meinen provides no factual allegations detailing whether his comparator also dealt with his supervisors, to what standards his comparator was held, or whether there were any mitigating or distinguishing circumstances in her case. *Id*. Because Meinen has not alleged circumstances that give rise to an inference of discrimination, Count II of his Amended Complaint is dismissed for failure to state a claim.

### C. Plaintiff's Hostile Work Environment Claim

Meinen also brings a claim for a hostile work environment due to the sexual harassment he experienced. (ECF. No. 19 at 6-7). In order to establish a *prima facie* case for hostile work environment, a plaintiff must show: (i) he belongs to a protected group; (ii) he was subject to unwelcome harassment; (iii) a causal nexus exists between the harassment and the protected group status; (iv) the harassment affected a term, condition, or privilege of employment; and (v) his employer knew or should have known of the harassment and failed to take proper action. *See Warmington v. Board of Regents of University of Minnesota*, 998 F.3d 789, 799 (8th Cir. 2021) (internal citations omitted). The fourth element contains "both objective and subjective components." *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 801 (8th Cir. 2009). At the pleading stage, the Court must determine whether the harassment alleged is "severe or pervasive enough to create an objectively hostile or abuse work environment" and whether the plaintiff subjectively believed that their "working conditions have been altered." *Blomker*, 831 F.3d at 1056.

The Court considers circumstances including the "frequency and severity of the discriminatory conduct," whether the conduct was "physically threatening or humiliating," and

9

whether the conduct "unreasonably interfered with the employee's work performance" when evaluating whether a complaint alleges an objectively hostile work environment. *Blomker*, 831 F.3d at 1057. The claim must allege more than "a few isolated incidents." *Id*. (internal citations omitted). Instead, the harassment must be "so intimidating, offensive, or hostile that it poisoned the work environment." *Id*. (internal quotations omitted). The "standards for a hostile environment are demanding". *Id*. Even "vile or inappropriate" behavior may be insufficient to rise to the level of a hostile work environment if not pervasive enough to infect the workplace and alter the plaintiff's working conditions. *Id*. at 1058.

Meinen details "several occasions" on which the Harasser intentionally "rubbed her backside" on him. (ECF No. 19 at 2). He also notes that the Harasser made sexually suggestive and humiliating comments while in front of their co-workers and personnel. *Id*. at 3. However, Meinen provides no factual allegations describing how or whether his working conditions were altered as a result of the harassment. Instead, he only alleges, without specifics, that it "affected a term, condition, or privilege of his employment." *Id*. at 7. This is insufficient to survive a motion to dismiss. This Circuit has held that such relatively minor incidents are insufficient to allege a hostile work environment. *See, e.g., Duncan v. County of Dakota, Neb.*, 687 F.3d 955, 958 (8th Cir. 2012) (holding that the harasser's conduct was not sufficiently severe when the harasser attempted to kiss and inappropriately touch the plaintiff; sent explicit emails, pornography and sexual jokes in the work place; and offered work benefits in exchange for sexual favors); *Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d 535, 540 (8th Cir. 2014) (concluding that thirty-plus incidents in which the harasser used racist and abusive language was not sufficiently severe to alter the plaintiff's employment or working environment). Thus, the Court must dismiss Count IV of Meinen's complaint. *See Iqbal*, 566 U.S. at 678.

In reviewing the entirety of Meinen's Amended Complaint, the Court finds it is supported by very few facts. Instead, the Amended Complaint largely contains conclusory statements. Thus, the Amended Complaint fails in respect to all four of Meinen's counts. In light of the fact that this is Meinen's second attempt at stating a claim, the Court will dismiss this case without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Bi-State's motion to dismiss, (ECF No. 20) is **GRANTED**. A separate Judgment of Dismissal without prejudice accompanies this Memorandum and Order.

Dated this 11th day of January, 2023.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**